

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

December 6, 2024

**Via ECF**
The Honorable Joan M. Azrack, U.S.D.J.
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 1020
Central Islip, New York 11722

Re: **Almendares v. El Fuerte Deli and Grocery Corp. et al.
 2:23-cv-08505-JMA-SIL**

Dear Judge Azrack:

Our office represents Lilian Almendares ("Almendares"), individually and on behalf of all others similarly situated ("Plaintiff"), and we submit this motion jointly with counsel for El Fuerte Deli and Grocery Corp. and El Fuerte Deli and Grocery II, Corp. (hereinafter, "El Fuerte Deli and Grocery"), and Junior Castro Jr. ("Castro") and Ramona Vargas ("Vargas"), as individuals (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached at a Court-annexed mediation with all parties present on September 5, 2024.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiff's counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

I. **The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

   a. **The Settlement Amount**

The parties agreed to resolve all claims asserted in this action, including Plaintiff's counsel's attorneys' fees, which are addressed below, for the global amount of $35,000.00.

### b. Plaintiff's Position

Plaintiff commenced this lawsuit alleging, *inter alia*, that she was not paid proper overtime rates of pay, appropriate minimum wages and spread of hours compensation in violation of the Fair Labor Standards Act (FLSA) and New York Labor Laws (NYLL).

Plaintiff Almendares alleged that she was employed by Defendants at El Fuerte Deli and Grocery from in or around May 2022 until in or around July 2022, with primary job duties and tasks as a cook, food preparer, and cleaner while performing related miscellaneous duties and tasks for the Defendants, at the instructions and orders of the individual Defendant.

Plaintiff Almendares alleged that she regularly worked seven (7) days per week from in or around May 2022 until in or around July 2022 and regularly worked a schedule of shifts beginning at approximately 4:00 a.m. each workday and regularly ending at approximately 11:00 p.m., or later, seven (7) days per week at Defendants' address located at 1 Long Beach Road, Hempstead, NY 11550.

Beginning at approximately on the fourth week of Plaintiff's employment, Plaintiff also worked at another deli located at 1142 Front Street, Uniondale, NY 11553. Plaintiff worked her first shift at 1 Long Beach Road, Hempstead, NY 11550 beginning at approximately 4:00 a.m. each workday and regularly ending and approximately 2:00 p.m. or later. Plaintiff would then travel to 1142 Front Street, Uniondale, NY 11553 to start her second shift beginning at approximately 3:00 p.m. each workday and regularly ending at approximately 11:00 p.m., or later, seven (7) days per week, from in or around May 2022 until in or around July 2022.

Thus, Plaintiff was regularly required to work approximately one hundred thirty-three (133) hours per week from in or around May 2022 until in or around July 2022.

Plaintiff further alleged that she was only compensated $500.00 in her first week of employment and was not compensated at all by the Defendants thereafter until the end of Plaintiff's employment. Thus, Plaintiff alleged that she was not compensated at all for approximately eleven (11) weeks of work. Plaintiff alleged that she was not compensated for her overtime work, spread of hours compensation, and the legally prescribed minimum wage for all her hours worked.

Based on the above, Plaintiff alleged she was owed approximately $26,903.57 in unpaid overtime wages, approximately $7,714.29 in unpaid minimum wages and approximately $1,350.00 in unpaid spread of hours, not including any other monetary relief that he may have been entitled to under the FLSA or NYLL.

Although Plaintiff was confident that she could prevail on all of her claims should this matter have proceeded to trial, Plaintiff's preference was for a guaranteed outcome via Court-approved settlement. Settlement at this juncture avoids the inherent risks and costs of litigation and allows Plaintiff to recover a substantial amount of her alleged unpaid wages claim – a figure strongly disputed by Defendants – in the near future as opposed to the uncertainty of recovery at a much later date in the future.  Based on all of the above, Plaintiff believes that the settlement is a fair and reasonable resolution as to her wage claims.

### c. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $35,000.00. The parties believe that this amount is reasonable considering Plaintiff's claims and the Defendants' defenses in this matter. Moreover, the settlement amount was only achieved after a mediation session before a qualified and experienced mediator with all parties present. The parties had genuine, bona fide disputes over the dates of Plaintiff's employment, the hours worked by Plaintiff, the pay received by Plaintiff, but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

### II.   The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 7 of the Settlement Agreement is appropriately tailored to claims under the FLSA, NYLL and their associated regulations. The Release does not raise any concerns regarding unequal bargaining power between Plaintiff and Defendants, and the Release is not overbroad such that there is a concern that Plaintiff is releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiff from openly discussing his experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

### III. Distribution to Plaintiff and Requested Attorneys' Fees and Expenses

#### a. Distribution to Plaintiff

The parties agreed to a global settlement of $35,000.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiff will recover $22,461.34 after the requested attorneys' fees and expenses.

#### b. Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $1,308.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $402.00
- the costs of service of the Summons and Complaint on all Defendants: $606.00
- the costs of mediator's fee: $300.00

Additionally, Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($33,692.00), or $11,230.66 in attorneys' fees, as agreed upon in Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $12,538.66.

As such, the settlement funds as broken down into its component parts is as follows:

**Settlement Amount:** $35,000.00
**Attorneys' Expenses:** $1,308.00
**Net Settlement Amount:** $33,692.00 ($35,000.00 - $1,308.00)
**Requested Attorneys' Fees:** $11,230.66 ($33,692.00 / 3)
**Total payable to Attorneys:** $12,538.66 ($11,230.66 + $1,308.00)
**Total payable to Plaintiff:** $22,461.34 ($35,000.00 - $12,538.66)

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation and the recovery secured through their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

### IV. Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable as the settlement was the product of back-and-forth negotiations between experienced counsel with the assistance of the Court-annexed mediation program. As such, we

respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

                                                    Respectfully submitted,

                                                    *James O'Donnell*
                                                    James O'Donnell, Esq.